USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/13/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| United States of America,<br><br>–v–<br><br>Jose Nieves,<br><br>Defendant. | 12-cr-931 (AJN)<br><br>MEMORANDUM AND ORDER |

ALISON J. NATHAN, District Judge:

Defendant Jose Nieves has moved for release compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons articulated below, the motion is denied.

## I.     BACKGROUND

On December 13, 2012, the Defendant was charged with a five-count indictment. *See* Dkt. No. 2. Count 1 charged participation from 2000 to 2012 in a narcotics conspiracy to distribute and possess with intent to distribute (i) 280 grams or more of crack cocaine and (ii) marijuana. Count 2 charged using and carrying firearms in connection with the narcotics conspiracy. Count 3 charged killing another person while engaged in the narcotics conspiracy. Count 4 charged using and discharging a firearm in connection with the murder charged in Count 3. Count 5 charged shooting and killing another person in connection with the narcotics conspiracy.

The murder-related charges stemmed from the killing of Roy Walker, a rival drug dealer. Walker had previously made threats against the Defendant. On June 1, 2010, while both Walker and the Defendant were in their cars, Walker began to chase and harass the Defendant. Eventually the Defendant pulled over. Walker also pulled over, left his car, and began to approach the Defendant, who was still in his car. The Defendant handed a gun to another

1

occupant in his car who then fatally shot Walker three times.  Although Walker was unarmed, the Defendant believed that Walker was going to harm him.  As he stated at his sentencing, "Sorry I did what I did, but I would not have been here if I didn't."  Sentencing Tr. 15:4-5.

Of importance here, the Defendant suffers from several serious medical ailments.  When he was thirteen, he was shot in the back and has been wheelchair-bound ever since.  The Defendant was also diagnosed ███████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

The Defendant pled guilty to a single lesser included offense of conspiracy to distribute and possess with intent to distribute mixtures and substances containing a detectable amount of crack and mixtures and substances containing a detectable amount of marijuana.  All remaining charges against him were then dismissed.  As part of plea agreement, the Defendant allocuted that his role in the killing of Walker would constitute murder under 18 U.S.C. § 1111.  Based on this fact, his acceptance of responsibility, and his lack of criminal history points, his guidelines sentence range would normally have been 324 to 405 months.  But because the statutory maximum of the offense for which he was convicted was 240 months, his guidelines sentence was 240 months.

Ultimately, Judge Scheindlin sentenced the Defendant to 192 months.[1]  A number of considerations affected her decision.  First, she noted that the Defendant participated in a long-running narcotics conspiracy that involved a murder.  She further observed that this violence was not an isolated incident, stating that the Defendant "never hesitated to use violence in his

---

[1] After Judge Scheindlin retired from the bench, this case was reassigned to the undersigned.

2

business." Sentencing Tr. 21:7. The Defendant was known to carry various weapons, threaten, and occasionally beat his workers. Moreover, the Defendant had been a drug dealer for his entire adult life and had never been employed. However, Judge Scheindlin also noted that because of the Defendant's numerous health issues, custody is harder for him than it would be for most defendants. Furthermore, the fact that Walker had threatened the Defendant was a mitigating circumstance. Judge Scheindlin therefore concluded that a below-guidelines sentence was appropriate.

The Defendant has now moved for compassionate release citing the COVID-19 pandemic. He is currently housed at FCI Butner Medium II, which has no confirmed COVID-19 cases, although its sister facility, FCI Butner Medium I, is one of the most afflicted BOP facilities in the country. *See United States v. Scparta*, No. 18-cr-578, 2020 U.S. Dist. LEXIS 68935, at *4-*5 (S.D.N.Y. Apr. 19, 2020). His current projected release date is September 2, 2026. He has served approximately half of his 192-month sentence.

**II.    DISCUSSION**

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed,' 18 U.S.C. § 3582(c); but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). Compassionate release is one of the limited exceptions enumerated in 18 U.S.C. § 3582(c). Under the recently enacted First Step Act, a court may reduce a defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable." *Id.* § 3582(c)(1)(A).

Before filing a compassionate release motion, a defendant usually must satisfy the statute's administrative exhaustion requirement. One avenue to doing so is if there is a "lapse of 30 days from the receipt of [] a request [for the BOP to bring a compassionate release motion] by the warden of the defendant's facility." *Id.* Here, the Defendant made a such a request more than thirty days ago, on March 26, 2020. The Government does not dispute that the Defendant has satisfied the exhaustion requirement. The Court therefore proceeds to the merits of the motion.

Granting the Defendant compassionate release would neither be "consistent with the applicable policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A)(i), or supported by the "factors set forth in section 3553(a)," *id.* § 3582(c)(1)(A). The Court first turns to the pertinent Sentencing Commission policy statements. Under the relevant guidelines provision and its commentary, a court may reduce a sentence for "extraordinary and compelling reasons," including where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A). There is no question that the COVID-19 pandemic qualifies as an extraordinary circumstance for this Defendant. He suffers from numerous ailments that put him at significant risk should he become infected, including ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. And continued incarceration will inevitably increase the likelihood that he will contract COVID-19. *See United States v. Scparta*, No. 18-cr-578, 2020 U.S. Dist. LEXIS 68935, *21-*22 (S.D.N.Y. Apr. 19, 2020); *United States v. Gross*, No. 15-cr-769, 2020 U.S. Dist. LEXIS 65758, at *8-*9 (S.D.N.Y. Apr. 13, 2020).

4

But this is not the only consideration under the guidelines. The Court must also conclude that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2); *see also* 18 U.S.C. § 3553(a)(2)(C). This it cannot do. The Defendant's "violent criminal histor[y]" cuts against compassionate release. *United States v. Martinez*, No. 12-cr-862, 2020 U.S. Dist. LEXIS 76367, at *8 (S.D.N.Y. Apr. 28, 2020); *see also United States v. Martin*, No. 18-cr-834, 2020 U.S. Dist. LEXIS 63451, at *8-*9 (S.D.N.Y. Apr. 10, 2020). The Defendant committed an extremely serious offense: a long running narcotics conspiracy that involved a murder. Although the Defendant believed that the victim of the murder posed a threat to his life, this violence was not an isolated incident but rather part of a larger pattern. And prior to his arrest, he had been a drug dealer for his entire adult life, never obtaining legal employment. As Judge Scheindlin put it "[h]e has never known any life other than that of a drug dealer, and he never hesitated to use violence in his business." Sentencing Tr. 21:6-7. And while the Defendant has made some efforts at rehabilitation, including earning his GED and completing a drug program, he has served only roughly half of his sentence.

Other § 3553(a) also favor denying compassionate release. Releasing the Defendant, even under these circumstances would not "reflect the seriousness of the offense. . . promote respect for the law. . . provide just punishment for the offense" or "afford adequate deterrence to criminal conduct." *Id.* § 3553(a)(2)(A), (B). As noted above the Defendant has served only roughly half of his sentence. *See Martinez*, 2020 U.S. Dist. LEXIS 76367, at *9; *United States v. Butler*, No. 18-cr-834, 2020 U.S. Dist. LEXIS 61021, at *7 (S.D.N.Y. Apr. 7, 2020). Moreover, that sentence reflects a very lenient punishment given the gravity of the Defendant's conduct. The Defendant received a plea deal that significantly lowered his guidelines sentence. On top of that, he then received a significantly below-guidelines sentence. As to the "the nature and

circumstances of the offense and the history and characteristics of the defendant," *id.* § 3553(a)(1), the Defendant clearly experienced a difficult upbringing and suffers from serious medical conditions. Yet, none of those ailments prevented him from pursuing a life of crime. On balance, the relevant factors weigh against compassionate release.

To be clear, the Court does not seek to minimize the Defendant's health issues. To the contrary, it is gravely concerned about the shortcomings of the BOP's response to the crisis and the consequences should the he become infected with COVID-19. But that alone is not enough to warrant compassionate release. Because of the violence and seriousness of the Defendant's crime, his history of violence, the fact that he has never had legal employment, and the significant amount of time remaining on his sentence, he must remain incarcerated.

## III. CONCLUSION

For the reasons articulated above, the Defendant's motion for compassionate release is denied.[2]

SO ORDERED.

Dated: May 11, 2020
New York, New York

ALISON J. NATHAN
United States District Judge

---

[2] This Memorandum and Order will temporarily be filed under seal. Within two days of its date, the parties should propose any redactions, after which it will be publicly docketed.